# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

_____

STANDARD PROCESS, INC.,

        Plaintiff,

    v.                                     Case No. 06-CV-803

TOTAL HEALTH DISCOUNT, INC.,

        Defendant.

_____

## ORDER

The plaintiff, Standard Process, Inc. ("Standard Process"), filed its amended complaint on July 6, 2007, alleging that the defendant, Total Health Discount, Inc. ("Total Health"), engaged in trademark infringement, false advertising, unfair competition, intentional interference with contractual relations, and related claims, all arising from the advertising and sales of dietary supplements under Standard Process's trademarks. Several motions are before the court. Total Health filed a motion for summary judgment on Standard Process's claims. Standard Process filed a motion to remove the confidential designation of certain documents and a motion for partial summary judgment on its claim of false advertising. Both parties filed motions for leave to file unredacted versions of their briefs and supporting documents under seal. The parties' motions are fully briefed and the court will address the motions below.

### BACKGROUND

Standard Process manufactures dietary supplements. Standard Process does not sell its products directly to consumers; rather, it sells through authorized

healthcare professionals and other authorized resellers. Pursuant to Standard Process's resale policy, its authorized resellers are prohibited from: (1) selling to other health care professionals or businesses; (2) selling, soliciting, or accepting orders via any e-commerce format including the Internet; and (3) selling Standard Process products in a retail setting directly to the general public, except sales from licensed pharmacies (on a behind-the-counter basis) or from health clinics. (Gentil Decl. ¶ 17, Ex. 6.)

Total Health operates the website, www.totaldiscountvitamins.com, an online store that sells over 350 brands of vitamins and other dietary supplements, including Standard Process products. However, Standard Process never authorized Total Health to sell Standard Process products. Indeed, Standard Process would like to prevent Total Health from selling its products. To achieve this goal, Standard Process terminated the accounts of Domenic Siracusa ("Siracusa"), a consultant for Total Health who obtained accounts with Standard Process in 2004. Standard Process terminated Siracusa's accounts in 2005, after it discovered that he was connected to Total Health and that he violated Standard Process's resale policy by selling Standard Process products over the Internet. Standard Process also sent Total Health a letter dated March 29, 2006, stating that Total Health's use of the Standard Process logo and pictures of its products on its website violated trademark law. (Am. Compl. Ex. E.) In response to this letter, Total Health removed the Standard Process logo and pictures of the products from its website, using instead the Standard Process name and product names in plain typeface. (Meyer Dec. 7,

2007 Decl. ¶ 9.) Total Health also posted the following disclaimer on its web pages that offer Standard Process products for sale:

> Total Health is not an authorized seller of Standard Process, Inc., products. Total Health purchases Standard Process supplements from authorized third parties for resale, and is in no way affiliated with, authorized, sponsored or related to Standard Process, Inc.

(*Id.* at ¶¶ 7, 17, Ex. C.)

Total Health continues to use this disclaimer and sell Standard Process products over the Internet. According to Total Health's website, it obtains the Standard Process products that it sells by purchasing those products from "authorized third parties." According to Standard Process, Total Health obtains the Standard Process products by using fraudulent tactics such as shell accounts and fictitious names to conceal the fact that Total Health is the true purchaser. Standard Process seeks an injunction against Total Health, preventing it from, among other things, using Standard Process's registered trademarks and logos and from representing that it is an authorized distributor or reseller of Standard Process products.

## ANALYSIS

Summary judgment is appropriate where the moving party establishes that there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Material facts" are those facts which "might affect the outcome of the suit," and a dispute about a material fact is "genuine" if a reasonable finder of fact could

Case 2:06-cv-00803-JPS   Filed 06/06/08   Page 3 of 25   Document 128

find in favor of the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate where a party has failed to make "a showing sufficient to establish the existence of an element essential to that party's case and on which the party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. A party opposing summary judgment may not rest upon the mere allegations or denials of the adverse party's pleading, but must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). Any doubt as to the existence of a material fact is to be resolved against the moving party. *Anderson*, 477 U.S. at 255. In considering cross-motions for summary judgment, the court is obliged to view all facts and draw all reasonable inferences in a light most favorable to the party against whom the motion under consideration is made. *Bassiouni v. FBI*, 436 F.3d 712, 721 (7th Cir. 2006).

Standard Process's amended complaint raises seven causes of action: (1) false designation of origin and false or misleading description or representation of fact in violation of 15 U.S.C. § 1125(a)(1); (2) trademark infringement in violation of 15 U.S.C. § 1114(1); (3) false advertising in violation of 15 U.S.C. § 1125(a); (4) fraudulent representation in violation of Wis. Stat. § 100.18; (5) common law trademark infringement; (6) common law unfair competition; and (7) intentional interference with contract. Pursuant to 28 U.S.C. § 1367(a), the court has supplemental jurisdiction over Standard Process's claims raised under Wisconsin law because all its claims arise from the same case or controversy. *See id.*

On December 14, 2007, Total Health filed a motion for summary judgment on the claims raised in Standard Process's amended complaint. First, Total Health argues that it is entitled to judgment as a matter of law on Standard Process's claims of trademark infringement and unfair competition because Total Health's unauthorized sales of Standard Process's products are protected by the first sale doctrine and the nominative fair use doctrine. Under the first sale doctrine, a mark holder's right to control distribution of its trademarked product does not extend beyond the first sale of the product. *Sebastian Int'l v. Longs Drug Stores Corp.*, 53 F.3d 1073, 1074 (9th Cir. 1995). Indeed, resale by the first purchaser of the original article under the producer's trademark is neither trademark infringement nor unfair competition. *Id.* "It is the essence of the 'first sale' doctrine that a purchaser who does no more than stock, display, and resell a producer's product under the producer's trademark violates no right conferred upon the producer by the Lanham Act." *Id.* at 1076. "When a purchaser resells a trademarked article under the producer's trademark, and nothing more, there is no actionable misrepresentation under the statute." *Id.* However, "the first sale doctrine does not protect resellers who use other entities' trademarks to give the impression that they are favored or authorized dealers for a product when in fact they are not." *Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1241 (10th Cir. 2006).

Although Total Health removed the Standard Process logo and pictures of the Standard Process products from its website and used the disclaimer quoted above (Meyer Dec. 7, 2007 Decl. ¶¶ 7, 9, 17), Standard Process submitted evidence

indicating that Total Health made statements suggesting that it was affiliated with Standard Process. For example, Standard Process submitted documents showing Total Health referring to Standard Process's 75th anniversary and describing its accomplishments using first-person pronouns "we" and "our" to refer to Standard Process. (Gentil Decl. ¶ 43; Exs. 10-13.) Indeed, Total Health admits that it uses "we" or "our" statements in connection with six product descriptions of Standard Process products. (Def.'s Feb. 11, 2008 Reply Br. 3.) In addition, it is undisputed that Total Health pays to receive prominent placement as a paid advertiser in search results for searches of "standard process" on popular search engines. (Gentil Decl. ¶¶ 58-63; Exs. 31-36.)

When ruling on Total Health's motion for summary judgment, the court is obliged to view the facts and draw all reasonable inferences in Standard Process's favor. *Bassiouni*, 436 F.3d at 721. Accordingly, although Total Health's disclaimer states that it "is in no way affiliated with, authorized, sponsored or related to Standard Process, Inc." (Meyer Dec. 7, 2007 Decl. ¶¶ 7, 17, Ex. C), Total Health's use of Standard Process's trademarks to be placed prominently as a paid advertiser in search engine results, in addition to Total Health's use of first-person pronouns "we" and "our" to refer to Standard Process products, could give consumers the impression that it is a favored or authorized Standard Process dealer when in fact it is not. Therefore, Total Health has not established that its unauthorized sales of Standard Process products are protected by the first sale doctrine. *See, e.g., Australian Gold*, 436 F.3d at 1241 (defendant's intentional use of plaintiff's

-6-

trademarks on defendant's web sites and in the metatags for the defendant's web sites constituted more than merely displaying and stocking trademarked items and was not shielded by the first sale doctrine).

Furthermore, Total Health has not established that its unauthorized sales of Standard Process products are protected by the nominative fair use doctrine. A commercial party may be entitled to a nominative fair use defense when it uses a mark holder's trademark to describe the mark holder's product provided the commercial party meets the following three requirements: (1) the product or service in question must be one not readily identifiable without use of the trademark; (2) only so much of the mark or marks may be used as is reasonably necessary to identify the product or service; and (3) the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder. *New Kids on the Block v. News America Pub., Inc.*, 971 F.2d 302, 308 (9th Cir. 1992). Here, given Total Health's undisputed use of Standard Process's name to be placed prominently as a paid advertiser in search engine results, and use of first-person pronouns "we" or "our" to refer to Standard Process products, the court is unable to conclude that Total Health has done "nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder." *See id.*; *see also Promatek Indus., LTD v. Equitrac Corp.*, 300 F.3d 808, 812-13 (7th Cir. 2002) (holding that initial consumer confusion was likely created by defendant's placing of its competitor's trademark in its keywords and metatags because consumers were diverted to defendant's website and defendant reaped the goodwill the plaintiff

Case 2:06-cv-00803-JPS   Filed 06/06/08   Page 7 of 25   Document 128

developed in its trademark). In sum, viewing the facts in the light most favorable to Standard Process, as the court must, a reasonable finder of fact could conclude that Total Health's conduct described above gave consumers the impression that it was a "favored or authorized" Standard Process dealer and that its conduct suggested "sponsorship or endorsement by" Standard Process. *See Australian Gold*, 436 F.3d at 1241; *Promatek*, 300 F.3d at 812-13. Accordingly, the court is obliged to deny Total Health's motion for summary judgment on Standard Process's trademark infringement and unfair competition claims.

Both parties argue they are entitled to summary judgment on Standard Process's claim of false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a). Total Health argues that it is entitled to summary judgment on this claim and on Standard Process's claim of fraudulent representation in violation of Wis. Stat. § 100.18 because, Total Health asserts, it has not made any false statements and Standard Process has not suffered any pecuniary damage. Standard Process argues that it is entitled to summary judgment on its claim of false advertising in violation of the Lanham Act because, Standard Process asserts, the following language used in the disclaimer on Total Health's website is literally false: "Total Health purchases Standard Process supplements from authorized third parties for resale." (Meyer Dec. 14, 2007 Decl. ¶ 7, Ex. C.) Standard Process asserts that Total Health does not purchase Standard Process products from "authorized third parties," and, thus, the representation is a literally false commercial statement.

Case 2:06-cv-00803-JPS   Filed 06/06/08   Page 8 of 25   Document 128

Wisconsin Statute § 100.18(1) prohibits the making "to the public" of an advertisement, statement, or representation which "contains any assertion, representation or statement of fact which is untrue, deceptive or misleading." *Id.* Similarly, section 43(a)(2) of the Lanham Act "prohibits the use of false or misleading statements or representations of fact in commercial advertising, and establishes a private remedy for any violation thereof." *Abbott Labs v. Mead Johnson & Co.*, 971 F.2d 6, 13 (7th Cir.1992). In *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813 (7th Cir. 1999), the Seventh Circuit described the five elements that must be proved to establish a claim of false advertising under the Lanham Act:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a loss of goodwill associated with its products.

*Id.* at 819. A false statement that constitutes a violation of the Lanham Act "generally falls into one of two categories: (1) commercial claims that are literally false as a factual matter; or (2) claims that may be literally true or ambiguous, but which implicitly convey a false impression, are misleading in context, or likely to deceive consumers." *Id.* at 820. "When the statement in question is actually false, the plaintiff need not show that the statement either actually deceived customers or was likely to do so." *Id.* When the statement is literally true or ambiguous, the

Case 2:06-cv-00803-JPS   Filed 06/06/08   Page 9 of 25   Document 128

plaintiff must prove that the statement is misleading in context by demonstrated actual consumer confusion. *Id.*

Here, Standard Process argues that Total Health's statement on its website, that it "purchases Standard Process supplements from authorized third parties for resale," constitutes a literally false statement in commercial advertising. In support of this position, Standard Process states that Total Health does not purchase Standard Process from third parties; rather, Total Health directly purchases Standard Process products from Standard Process by paying for those orders using credit cards from Total Health employees and by purchasing through "fictitious" and "shell" accounts in the names of individuals who opened accounts with Standard Process at the request of Total Health. (Plaintiff's Proposed Findings of Fact ¶¶ 5-8, 15-16, 20-22.) Therefore, Standard Process argues, Total Health's representations that it purchases Standard Process products from authorized third parties constitutes a literally false commercial statement in violation of the Lanham Act. Due to these statements, Standard Process argues, it has suffered loss to the value of its brand and injury to its goodwill because Total Health's statements suggest that Standard Process does not enforce its resale policy. Standard Process states that it has received "hundreds of calls and e-mails from end users and S[tandard] P[rocess] Customers and other persons inquiring whether Total Health is authorized to resell S[tandard] P[rocess] Products and inquiring why it is selling S[tandard] P[rocess] Products on the Internet." (Gentil Decl. ¶ 65.)

Total Health contends that Standard Process's false advertising claims must be dismissed because Standard Process has not been harmed by Total Health's allegedly false statements. Total Health argues that it is entitled to summary judgment on Standard Process's false advertising claim because Standard Process has not presented evidence that it suffered pecuniary damages, and, to the contrary, Total Health suggests that its sales of Standard Process's products actually increased Standard Process's revenue. Total Health also asserts that Standard Process's claim under Wis. Stat. § 100.18 should be dismissed because Standard Process has sustained no injury, and claims under § 100.18 require proof that the claimant "sustained a monetary loss as a result of the assertion, representation, or statement." Wis JI-Civil 2418 (2007). Total Health also argues that its disclaimer is not "literally false," and, therefore, Standard Process must prove consumer confusion. Total Health states that it currently purchases Standard Process products from third party accounts who have authorized Total Health to place orders in the account holder's name as an agent of the account holder. Total Health argues that because its disclaimer accurately describes this agency scenario, the disclaimer is literally true, or at worst, ambiguous – requiring evidence of actual customer confusion. *See Hot Wax*, 191 F.3d at 820. In addition, Total Health argues that Standard Process's evidence of consumer confusion is insufficient because the complaints described by Standard Process are actually from Standard Process account holders complaining about competition from Total Health and the advantage Total Health achieves by selling Standard Process products over the Internet, not

-11-

complaints from confused consumers. Finally, Standard Process argues that even if its statement is considered to be false, the deception is not material because it is unlikely to influence a consumer's purchasing decision.

A review of the record reveals genuine issues of material fact regarding whether Standard Process has been or is likely to be injured by Total Health's statement by a loss of goodwill associated with its products, and regarding whether the disclaimer constitutes a deception likely to influence a consumer's purchasing decision. Viewing the facts and drawing all reasonable inferences in Total Health's favor, the court concludes that a reasonable finder of fact could determine that Standard Process is not injured by Total Health's statement that it "purchases Standard Process supplements from authorized third parties for resale." Indeed, a reasonable finder of fact could conclude that the statement is not literally false because Total Health purchases its Standard Process products using the accounts of individuals who are authorized resellers of Standard Process products. If these accounts were not authorized, then Standard Process would not fill their orders. In addition, it is undisputed that the Standard Process products sold by Total Health are unaltered products manufactured and packaged by Standard Process. Furthermore, a reasonable finder of fact could conclude that Standard Process has not suffered a loss of goodwill associated with its products as a result of the disclaimer, or that consumers are actually confused by Total Health's use of the disclaimer. *See Matrix Essentials, Inc. v. Emporium Drug Mart, Inc.*, 988 F.2d 587, 591 (5th Cir. 1993) (affirming dismissal of plaintiff's Lanham Act claim that hair-care products sold

without concurrent consultation by a licensed cosmetologist were not "genuine" because the plaintiff's claim did not involve "some defect (or potential defect) in *the product itself* that the customer would not be readily able to detect.") (emphasis in original); *see also S&L Vitamins, Inc. v. Australian Gold, Inc.*, 521 F. Supp. 2d 188, 205 (E.D.N.Y. 2007) ("when a customer purchases a product off the internet, the customer does not expect that they will receive individualized instruction on how to use the product.").

On the other hand, viewing the facts and drawing all reasonable inferences in Standard Process's favor, the court concludes that a reasonable finder of fact could determine that Standard Process suffers a loss of goodwill associated with its products as a result of Total Health's disclaimer, or that consumers are confused by Total Health's use of the disclaimer. For example, a reasonable finder of fact could conclude that Standard Process suffers a loss of goodwill associated with its products because consumers reading Total Health's statement that it "purchases Standard Process supplements from authorized third parties for resale" could conclude that Standard Process no longer enforces its resale policy, or that Standard Process changed its philosophy that its products are to be "provided within the context of an ongoing relationship between the end user and the S[tandard] P[rocess] Customer, in which the health care professional monitors and adjusts the protocol they have given the end user as needed." (Gentil Decl. ¶ 14.) In addition, a reasonable finder of fact could conclude that statement is actually false because Total Health effectively purchases its Standard Process products for itself through

other individuals' accounts without Standard Process's permission and, therefore, Standard Process would not be required to prove actual consumer confusion. *See Hot Wax*, 191 F.3d at 820. Furthermore, a reasonable finder of fact could conclude that the statement is material because the statement induces consumers to purchase Standard Process products without the advice of a health care professional, contrary to Standard Process's resale policy. In sum, because genuine issues of material fact exist, and neither party has demonstrated that it is entitled to judgment as a matter of law on Standard Process's claims of false advertising and misrepresentation in violation of 15 U.S.C. § 1125(a) and Wis. Stat. § 100.18, the court is obliged to deny both parties' motions for summary judgment on those claims.

Total Health also argues that it is entitled to summary judgment on Standard Process's claim of intentional interference with contractual relations. Total Health argues that Standard Process cannot prove that its resale policy is an enforceable contract, that Total Health knew that the resale policy was a contract, or that Standard Process was damaged by the alleged interference. In response, Standard Process requests, pursuant to Fed. R. Civ. P. 56(f), that the court deny Total Health's motion for summary judgment with respect to the interference with contract claim or continue ruling on the motion until the court rules on Standard Process's motion to remove the confidentiality designation of certain documents.

Total Health agreed to provide a list of the names of accounts through which it obtains Standard Process products (the "account list"), on the condition that the account list be marked "confidential attorneys' eyes only" pursuant to the parties'

amended protective order. (Maher Nov. 20, 2007 Decl. Ex. E.) Standard Process filed a motion to remove the confidential designation of documents, including the account list, designated "confidential attorneys' eyes only" by Total Health. Standard Process argues that the information and the account list are directly relevant to Standard Process's interference with contract claim. Given the confidentiality designation, Standard Process's outside counsel cannot consult with Standard Process about the account list and other confidential information, and Standard Process asserts that the confidential designation impedes its ability to present facts essential to justify its opposition to the motion for summary judgment.

Pursuant to Rule 56(f), if it appears that the nonmoving party, for legitimate reasons, has not yet gathered its supporting materials, that party may petition the court for more time to respond to a summary judgment motion, and the court is empowered either to deny the motion for summary judgment or to order a continuance to permit the necessary discovery. *See* Fed R. Civ. P. 56(f). "A party seeking the protection of Rule 56(f) must make a good faith showing that it cannot respond to the movant's affidavits. The rule requires the filing of an affidavit stating the reasons for a claimant's inability to submit the necessary material to the court." *Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049, 1058 n.5 (7th Cir. 2000) (quoting *United States v. All Assets and Equip. of W. Side Bldg. Corp.*, 58 F.3d 1181, 1190 (7th Cir. 1995)); *see also Farmer v. Brennan*, 81 F.3d 1444, 1449 (7th Cir. 1996) (holding that the party seeking further time to respond to a summary judgment

motion must give an adequate explanation to the court of the reasons why the extension is necessary).

According to Standard Process's Rule 56(f) request, once the court rules on Standard Process's motion to remove the confidentiality designation of the account list and related information, Standard Process will have the opportunity to present facts essential to justify its opposition to the motion for summary judgment on its claim of interference with contractual relations. In support of its Rule 56(f) request, Standard Process cites to the affidavit of one of its outside attorneys, stating that because of the confidential designation, she is unable to advise Standard Process on the details of how Total Health purchases its Standard Process products. Specifically, Standard Process's attorney states:

> I am unable to disclose to my client the names on the accounts through which Total Health has purchased Standard Process products or the . . . manner in which it is doing so. Thus, I am unable to assess with my client the impact, if any, of the newly discovered information on its claim for interference with contract based upon the contract between Standard Process and the accounts on the Purchasing Account List. It may be appropriate to modify or withdraw claims previously asserted, and to assert different claims . . . based upon the facts that have now come to light. However, I am unable to discuss these issues with my client due to the confidentiality designations.

(Maher Nov. 20, 2007 Decl. ¶ 21(a).) In addition, Standard Process's attorney states:

> The newly discovered facts relating to Total Health's purchasing affect the strategy for this case, and affect the nature of the claims that were and could be made. Total Health kept its . . . purchasing a secret from Standard Process, and has done so in this case. It clearly wants to continue to do so under the guise of the Amended Protective Order.

> Thus, Standard Process is operating without knowledge of the full facts regarding Total Health's activities.

(*Id.* at ¶ 21(j).)

Pursuant to the parties' amended protective order dated September 21, 2007, "[a] party may designate documents or information . . . as 'CONFIDENTIAL ATTORNEYS' EYES ONLY' only if the producing party believes, in good faith, that the document or information is so highly confidential and proprietary that it would harm the producing party if disclosed to the other party because the parties directly compete with one another." (Protective Order ¶ 2.) Pursuant to Civil Local Rule 26.4(b), "[t]he designation of confidentiality by a party may be challenged by the opponent upon motion." *Id.* Here, Standard Process argues in its motion to remove the confidentiality designation that the account list and purchasing information should not be covered by the protective order because Total Health has not presented good cause to warrant such protection, and Total Health did not make efforts to keep the information confidential. In response, Total Health contends that it keeps the information confidential, and that its presents good cause justifying the confidentiality designation because disclosure of the information to Standard Process would have harmful effects on Total Health's business. Total Health states that if it is forced to disclose the names of the accounts through which it obtains Standard Process products, then Standard Process will terminate those accounts, and, as a consequence, Total Health will lose approximately 18 percent of its business. (Meyer Dec. 13, 2007 Decl. ¶¶ 7-8.)

Federal Rule of Civil Procedure 26(c)(1) provides that a court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: . . . requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way . . . ." Fed. R. Civ. P. 26(c)(1)(G). When protection from disclosure is sought, "the court must apply a balancing test to determine whether the need of the party seeking disclosure outweighs the adverse effect such disclosure would have on the policies underlying the [claimed] privilege." *Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556, 559 (7th Cir. 1984). When confidential information is being sought, "the burden is on the party seeking discovery to establish that the information is sufficiently relevant and necessary to his case to outweigh the harm disclosure would cause to the person from whom he is seeking the information." *Greater Rockford Energy & Technology Corp.*, 138 F.R.D. at 534 (quoting *Litton Industries v. Chesapeake & Ohio Ry.*, 129 F.R.D. 528, 530 (E.D. Wis. 1990)). When balancing these interests, the court considers the relevance of the requested information, the demonstrated need for the information, and whether the request is burdensome. *See id.*

Here, it appears Total Health has taken reasonable steps to ensure the confidentiality of the account list. Total Health stores the list of names in a secure location, and the account list information is known to only three people. (Siracusa Dec. 14, 2007 Decl. ¶¶ 2-5.) Indeed, the fact that Standard Process is unable to determine the names of the accounts through which Total Health obtains its products

-18-

suggests that Total Health maintains the confidentiality of the list. Total Health also presents good cause justifying the confidentiality designation. It is undisputed that if Total Health is forced to disclose the account list, Standard Process would terminate those accounts and, as a consequence, Total Health would lose substantial business. (Meyer Dec. 13, 2007 Decl. ¶¶ 7-8.) As such, Total Health has demonstrated that it would face substantial harm if the confidential designation is removed. *See, e.g., Nixon v. Warner Communications*, 435 U.S. 589, 598 (1978) (noting that courts have refused to permit their files to become sources of business information that might harm a litigant's competitive standing).

In addition, the reasons provided by Standard Process in its motion to remove the confidential designation, that the information may affect its claims, do not justify requiring disclosure. For example, Standard Process states that "[i]t may be appropriate to modify or withdraw claims . . . based upon the facts that have now come to light," and that because of the confidential designation, it is "unable to assess . . . the impact, if any, of the newly discovered information on its claim for interference with contract. . . . " (Maher Nov. 20, 2007 Decl. ¶ 21(a).) Thus, Standard Process concedes that the account list information may ultimately have no impact on its claim of interference with contract. As such, Standard Process does not provide compelling reasons for its Rule 56(f) request. Furthermore, Standard Process has not demonstrated that the account list and other information designated "confidential attorneys' eyes only" is sufficiently relevant and necessary to its claims against Total Health to outweigh the harm disclosure would cause to Total Health.

*See Deitchman*, 740 F.2d at 559; *see also Nutratech, Inc. v. Syntech Int'l, Inc.*, 242 F.R.D. 552, 556 (C.D. Cal. 2007) ("Many cases involving claims of trademark infringement require the production of customer and supplier lists and such lists are customarily produced subject to an 'attorney's eyes only' order. The attorneys for plaintiffs commonly manage to conduct discovery and litigation strategy without revealing such information to their clients.") In light of the foregoing, the court will deny Standard Process's Rule 56(f) request and its motion to remove the confidentiality designation of the documents and information pertaining to Total Health's purchasing of Standard Process products. Under the circumstances of this case, it is understandable that Standard Process would like to control the sales and marketing of its own products and prevent Total Health from obtaining its products for resale. However, the court is not inclined to grant such relief in a discovery motion. *See, e.g., Autotech Techs. L.P. v. Automationdirect.com, Inc.*, 235 F.R.D. 435, 446 (N.D. Ill. 2006) ("Discovery is not intended to be used to acquire indirectly the very relief that is supposed to await the determination of the action on the merits.").

Standard Process contends that even without the Rule 56(f) extension and confidential account information it has presented evidence to support its interference with contract claim. The elements of a claim for intentional interference with contract are: (1) that the plaintiff had a contractual relationship or prospective contractual relationship with a third party; (2) that the defendant interfered with that relationship; (3) the interference by the defendant with the relationship was intentional; (4) there

was a causal connection between the interference and harm to plaintiff; and (5) the defendant had no justification or privilege to interfere. *Wangard Partners, Inc. v. Graf*, 2006 WI App 115, ¶ 37 n.6, 294 Wis. 2d 507, 719 N.W.2d 523.

Standard Process asserts that its resale policy constitutes a contract, and when Total Health induces Standard Process customers to purchase from Standard Process and sell to Total Health, Total Health interferes with the purchase contracts between Standard Process and its customers. However, to have a contract, there must at a minimum be a "mutual meeting of the minds and of intention to contract." *Garvey v. Buhler*, 146 Wis. 2d 281, 289, 430 N.W.2d 616, 619 (Wis. Ct. App. 1988). For mutual promises to furnish consideration and form a binding contract, they must impose some legal liability on both parties making the promises. *First Wis. Nat'l Bank v. Oby*, 52 Wis. 2d 1, 7, 188 N.W.2d 454 (1971). Here, Standard Process cites to no authority to support its position that its unilateral resale policy constitutes a contract or that it had a contractual relationship with its account holders. Indeed, in return for account holders' promises not to sell to other businesses, sell via the Internet, or sell in a retail setting directly to the general public, Standard Process commits to nothing. (Gentil Decl. ¶ 17, Ex. 6.) Rather, it merely reserves the option to do that which it is always entitled to do; to stop doing business with account holders that act against its interests. Such a policy has been found to not constitute an enforceable contract. *See F. Schumacher & Co. v. Silver Wallpaper & Paint Co.*, 810 F. Supp. 627, 635 (E.D. Pa. 1992) ("To have an internal corporate policy setting

Case 2:06-cv-00803-JPS   Filed 06/06/08   Page 21 of 25   Document 128

forth how business shall be done is one thing. To give that policy binding legal effect on third parties is quite another.").

In addition, Standard Process presents no evidence that Total Health interfered with any contractual relationship, or that Total Health harmed Standard Process, elements essential to its interference with contract claim. Indeed, the sales of Standard Process products generated by Total Health could easily be considered a benefit to Standard Process, not an injury. *See, e.g., Graham Webb Int'l Ltd. Partnership v. Emporium Drug Mart*, 916 F. Supp. 909, 918 (E.D. Ark. 1995) (holding that the element of damage in an interference with contract claim was not established because there was no evidence that lost sales of plaintiff's products from professional salons would be greater than the increased revenue resulting from the availability of the product in ordinary retail outlets); *H.L. Hayden Co. v. Siemens, Medical Sys., Inc.*, 879 F.2d 1005, 1024 (2d Cir. 1989) (rejecting a claim for interference with contract based on diverted sales because plaintiff showed no pecuniary loss resulting from the diversion). Because Standard Process has not demonstrated that its resale policy could qualify as an enforceable contract, or presented evidence of harm caused by an interference with a contractual relationship, the court is obliged to grant Total Health's motion for summary judgment on Standard Process's claim of intentional interference with contract, count seven in the amended complaint. *See Wangard Partners*, 2006 WI App 115, at ¶ 37 n.6, 294 Wis. 2d 507, 719 N.W.2d 523.

Finally, both parties have motions to seal pending before the court. Standard Process moves for leave to file under seal the information designated as "confidential attorneys' eyes only" by Total Health in addition to its briefs, exhibits, and deposition transcripts discussing this information because these materials detail Total Health's account list and the means through which Total Health obtains Standard Process products. As discussed above, the court concludes that Total Health presents good cause to shield this information from disclosure. As such, the court will grant Standard Process's motion to seal its unredacted brief and the unredacted declaration of Ann M. Maher, including the attached deposition transcripts and purchasing account list, submitted in support of its motion to remove the confidentiality designation.

Standard Process also moves for leave to file under seal the unredacted versions of it briefs, affidavits, and proposed findings of fact and conclusions of law submitted in connection with its motion for partial summary judgment. Standard Process states that these documents discuss the account list and other confidential details pertaining to Total Health's purchasing of Standard Process products. Total Health also moves for leave to file under seal unredacted versions of its briefs, affidavits, deposition transcripts, exhibits, and other documents submitted in connection with its motion for summary judgment and in opposition to Standard Process's motion to remove the confidentiality designation and Standard Process's motion for partial summary judgment. Total Health states that these materials discuss information designated "confidential attorneys' eyes only," including the

-23-

account list and the specific methods through which Total Health's accounts were created.

After reviewing the material the parties seek to file under seal, it appears that their submissions contain information that legitimately qualifies as confidential. In addition, the account list and other information pertaining to Total Health's purchase of Standard Process's products does not appear to play a central role in Standard Process's remaining claims. As such, the court concludes that good cause exists to warrant the sealing of documents discussing that information. However, the parties shall ensure that they have publicly filed redacted versions of their submissions, in particular any briefs, and that the redacted versions only exclude references to confidential material. The court notes that any interested member of the public can challenge the sealing of these documents pursuant to paragraph 9 of the parties' amended protective order.

Accordingly,

**IT IS ORDERED** that Standard Process's motion to compel seeking removal of the confidential designation of certain documents (Docket #51) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Standard Process's motion for partial summary judgment (Docket #74) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Total Health's motion for summary judgment (Docket #57) be and the same is hereby **GRANTED** in part and **DENIED** in part. Standard Process's claim of intentional interference with contract, count seven in the

-24-

amended complaint, be and the same is hereby **DISMISSED** for the reasons set forth above;

**IT IS FURTHER ORDERED** that the parties' motions for leave to file documents under seal (Docket ## 52, 59, 64, 79, 98, 106, 123) be and the same are hereby **GRANTED**.

Dated at Milwaukee, Wisconsin, this 6th day of June, 2008.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge